854 F.2d 156
 Bankr. L. Rep. P 72,399
In re Zadock REID, Debtor-Appellant.
Arthur T. SUSMAN and Marvin Temple, Petitioners-Appellants,
v.
Dale R. SCHMID, D.D.S., Ralph F. Schmid, Katherine G.
Dengler, and Michael Overfield, Petitioning
Creditors-Appellees.
 No. 87-1858.
 United States Court of Appeals,
Seventh Circuit.
 Argued Dec. 9, 1987.
Decided July 21, 1988.
 
 Arthur T. Susman, Susman, Saunders & Buehler, Chicago, Ill., for petitioners-appellants.
 Harry S. Miller, Chicago, Ill., for petitioning creditors-appellees.
 Before CUMMINGS and FLAUM, Circuit Judges, and GRANT, Senior District Judge.*
 FLAUM, Circuit Judge.
 
 
 1
 Dale Schmid, D.D.S., Ralph Schmid, Katherine G. Dengler, and Michael Overfield (the "creditors") filed an involuntary petition in bankruptcy against Zaddock & Co. ("Zaddock") under Sec. 303(b)(1) of the Bankruptcy Code of 1978. 11 U.S.C. Sec. 303(b)(1). Shortly thereafter the creditors filed another involuntary petition against Zaddock's president and principal shareholder Zadock Reid ("Reid"). The district court appointed an interim trustee to manage both Zaddock's estate and Reid's personal estate. Reid appealed the appointment of the interim trustee. We determined that at least on the basis of the evidence relied on by the district court, the creditors' claims against Reid were the subject of a bona fide dispute and therefore could not serve as the basis for an involuntary petition in bankruptcy. In re Reid, 773 F.2d 945 (7th Cir.1985). Reid and his former attorneys, Arthur T. Susman and Marvin Temple (collectively "appellants"),[1] now seek to recover $63,570 in attorneys' fees and expenses incurred in rectifying what the appellants characterize as the wrongful appointment of an interim trustee. The district court denied their fee petition. We affirm.
 
 I.
 
 2
 On June 29, 1984 the creditors filed an involuntary petition in bankruptcy against Zaddock. On July 2, 1984 an interim trustee, Nathan Yorke, was appointed to manage the Zaddock business. Pursuant to his responsibilities as interim trustee, Yorke conducted a hearing at which Reid was examined. Reid invoked his fifth amendment right against self-incrimination and refused to answer any questions other than his name and legal residence.
 
 
 3
 On July 13, 1984 the creditors filed an involuntary petition against Reid individually. Four days later, the creditors filed an emergency application under 11 U.S.C. Sec. 303(g) to have an interim trustee appointed to take possession of Reid's personal assets in order to prevent loss to his estate. Pursuant to Sec. 303(g), the district court conducted a hearing and concluded that Reid controlled Zaddock and was improperly commingling Zaddock's assets with his own personal assets. As a result, the court appointed Yorke as interim trustee to manage Reid's personal estate and ordered the creditors to post a $10,000 bond to protect Reid against damages, including damages which might be recoverable under 11 U.S.C. Sec. 303(i). Bankr. R. 2001(b).
 
 
 4
 Reid appealed, arguing that the appointment of the interim trustee was unlawful because the creditors' claims against him were subject to a bona fide dispute and therefore could not serve as the basis for an involuntary petition in bankruptcy. We reversed the district court in a divided opinion, each judge writing separately. In re Reid, 773 F.2d 945 (7th Cir.1985).
 
 
 5
 Two judges found that the creditors failed to satisfy their burden under Sec. 303(b)(1) which provides that an involuntary case in bankruptcy may be commenced by three or more creditors, "each of whom is ... a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute." 11 U.S.C. Sec. 303(b)(1). Reid's alleged liability to the creditors was premised on the theory that the "corporate veil" should be "pierced"--that Reid should be held personally liable for Zaddock's obligations to the creditors because he commingled Zaddock's assets with his own and transferred them to foreign jurisdictions. These two judges determined that the evidence relied on by the district court was insufficient to conclude that Reid was commingling assets and therefore was also insufficient to support the conclusion that the creditors' claims against Reid were not the subject of a bona fide dispute. The lead opinion specifically stated that the creditors therefore lacked standing to file an involuntary petition against Reid and reversed "the district court's grant of the creditors' involuntary petition for the appointment of an interim trustee." Reid, 773 F.2d at 948. The case was remanded to the district court "for further proceedings consistent with [the] opinion." Id.
 
 
 6
 In his concurring opinion, Judge Cudahy stated:
 
 
 7
 I agree that the petitioning creditors have not established the absence of a bona fide dispute with respect to their claims against Zadock Reid. I would therefore expressly authorize the district court on remand to conduct further evidentiary proceedings to determine whether the dispute as to Reid's liability is bona fide.
 
 
 8
 Id. Judge Wood, Jr. dissented, reasoning that the evidence relied on by the district court was sufficient to support its conclusion.
 
 
 9
 On December 4, 1985, the appellants filed a joint petition for damages, fees, and costs related to the appointment of the interim trustee. The petition was captioned "Joint Petition of Alleged Debtor and His Attorneys Arthur T. Susman and Marvin W. Temple For Damages, Fees and Costs." The district court ruled that the motion was premature. The court interpreted our decision as requiring further consideration of the question of Reid's personal liability for Zaddock's obligations to the creditors. In re Reid, No. 84 B 8768, mem. op. at 3 (N.D.Ill. Jan. 14, 1986). The court therefore denied the petition without prejudice pending further proceedings. These further proceedings, however, were hampered by Reid's repeated failure to attend. Apparently not comforted by the success of his first appeal, it now appears that Reid is outside the country and the possibility of his return is uncertain at best.
 
 
 10
 On August 29, 1986 the appellants filed a "Joint Petition of Alleged Debtor's Attorneys, Arthur T. Susman and Marvin W. Temple, for Fees and Costs." Although the petition's caption did not specifically refer to Reid, the first sentence stated that "[t]his petition for fees and costs is submitted by the Debtor and the attorneys for Zadock Reid...." The petition was substantially similar to the petition filed on December 4, 1985 except that it omitted the debtor's prior request for damages caused by the wrongful filing of the involuntary petition. The district court denied the fee petition. The appellants now renew their claim for $63,570 in fees (510 hours) and costs allegedly incurred in their effort to set aside the appointment of the interim trustee to manage Reid's estate.[2]
 
 II.
 
 11
 Appellants base their claim for fees and expenses in part on 11 U.S.C. Sec. 303(i). This section provides:
 
 
 12
 If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment--
 
 
 13
 (1) against the petitioners and in favor of the debtor for--
 
 
 14
 (A) costs;
 
 
 15
 (B) a reasonable attorney's fee; or
 
 
 16
 (C) any damages proximately caused by the taking of possession of the debtor's property by a trustee appointed under ... [Sec. 303(g) ]; or
 
 
 17
 (2) against any petitioner that filed the petition in bad faith, for--
 
 
 18
 (A) any damages proximately caused by such filing; or
 
 
 19
 (B) punitive damages.
 
 11 U.S.C. Sec. 303(i).[3]
 
 20
 A degree of uncertainty in this case is attributable to the division within the panel that decided Reid's prior appeal. The district court interpreted the prior decision as an instruction to conduct a further inquiry into whether the creditors' claims against Reid were the subject of a bona fide dispute. Section 303(i) authorizes a district court to award fees if it dismisses an involuntary petition filed against a debtor. The appropriateness of dismissing the creditors' petition in this case depends on whether their claim that Reid was depleting Zaddock's assets for his personal use was the subject of a bona fide dispute under Sec. 303(b)(1). The district court was not able to resolve this issue on remand because Reid never appeared for any of the scheduled proceedings. Accordingly, the district court ruled that the appellants were not entitled to fees under Sec. 303(i) because the court had not dismissed the creditors' involuntary petition.[4]
 
 
 21
 The appellants argue that the district court erred in its reading of our prior opinion. They reason that both the lead opinion and the concurring opinion state that the creditors failed to establish that their claims were not the subject of a bona fide dispute as required under Sec. 303(b)(1). The creditors therefore lacked standing to bring the involuntary petition and it must be dismissed. Thus, in the appellants' view, all that remained for the district court to do on remand was to formally "dismiss the involuntary petition and entertain petitioners' petition for costs and attorneys' fees." Appellants' Br. at 9.
 
 
 22
 Even if we accept this view of our earlier opinion, it does not follow that the appellants must be awarded fees under Sec. 303(i). The language of Sec. 303(i) states that if the court dismisses an involuntary petition, it "may grant judgment" in favor of the debtor. (Emphasis added). The use of the word "may" indicates that fees do not have to be awarded in all cases. Whether fees and costs should be awarded is committed to the discretion of the district court. In re: Gerald Nordbrock, 772 F.2d 397, 400 (8th Cir.1985). The district court did not abuse its discretion by denying appellants' fee petition in this case.
 
 
 23
 Neither party has directed us to, nor have we independently located, any authority which sets forth criteria to guide a district court's exercise of discretion when awarding fees under Sec. 303(i). Appellants stress that the legislative history of Sec. 303(i) demonstrates that it was enacted in recognition of the serious harm inflicted upon alleged debtors when involuntary petitions are wrongfully filed. Part of this harm includes the attorneys' fees and costs incurred in seeking to dismiss the involuntary petition. But the plain language of the statute clearly contemplates that fees and costs will not be awarded in all cases, even though a party will ordinarily incur attorneys' fees in seeking to dismiss the petition. The legislative history is therefore ultimately not helpful in identifying those cases in which a fee award under Sec. 303(i) is appropriate.
 
 
 24
 One possible criterion for identifying such cases is the presence of bad faith on the part of the creditors in filing the involuntary petition. Section 303(i) distinguishes between good and bad faith petitions with respect to the type of recovery that may be awarded, but makes no similar distinction as to the district court's initial decision to make an award at all under this subsection. See 11 U.S.C. Sec. 303(i)(2) (punitive damages and damages proximately caused by the filing are authorized if the involuntary petition is filed in bad faith). Because Congress specifically distinguished between good and bad faith petitions with respect to damages, but not in determining when the court should make a Sec. 303(i) award, it may not have intended bad faith to be relevant to the award decision itself. Conceivably, Congress' focus was on the well-being of the debtor, which is not necessarily a function of the petitioning creditors' state of mind. This position, however, is difficult to reconcile with Congress' decision to authorize additional remedies when a petition is filed in bad faith. The more plausible reading of the provision is that Congress believed that an involuntary petition filed in bad faith was sufficiently offensive to justify an additional recovery, but chose to reserve to the court the power to withhold an award in certain rare circumstances. Accordingly, we believe that the presence or absence of bad faith will inform the exercise of the district court's discretion under Sec. 303(i). Appellants, however, have made no allegations of bad faith on the part of the creditors in this case.
 
 
 25
 Congress' decision to authorize fees under Sec. 303(i) also suggests that bad faith on the part of the creditors is not the only situation in which fees may be awarded. See Christiansburg Garment Co. v. E.E.O.C., 434 U.S. 412, 419, 98 S.Ct. 694, 699, 54 L.Ed.2d 648 (1978) (statute providing that a "court, in its discretion, may" allow fees was interpreted to encompass more than bad faith conduct because the American Rule already provided a remedy for such conduct, making the statutory provision unnecessary). Thus, the district court should also consider the merit of a creditor's position that the petition was properly filed when determining whether a recovery should be awarded under Sec. 303(i). In this case, Reid argued that the creditors' involuntary petition should be dismissed because Sec. 303(b)(1) required that the creditors' claims not be the subject of a bona fide dispute.[5] This in turn hinged on whether Reid had commingled Zaddock's business assets with his own, thereby making Reid accountable for Zaddock's obligations to the creditors. This was a close question, as demonstrated by the differing outcomes reached by the courts which considered the issue. As the district court stated:
 
 
 26
 Attorneys for the petitioning creditors sought a determination by the court that there was no bona fide dispute as to the commingling of Reid's assets with those of the involved corporation and, after hearing, this court so held. The Seventh Circuit thereafter disagreed, leaving this court in the uncomfortable position of addressing a petition to assess costs and fees against attorneys for advancing a position which this court was persuaded had merit.
 
 
 27
 In re Reid, No. 84 B 8768, mem. op. at 3 (N.D.Ill. May 5, 1987) (order denying attorneys' fees). On these facts, we hold that the district court did not abuse its discretion when it denied appellants' fee petition under Sec. 303(i).
 
 
 28
 The appellants argue, however, that the appointment of the interim trustee to manage the debtor's business is both a drastic step and one which is potentially very detrimental to the debtor. The appellants contend that because this step was wrongfully taken against Reid, an award of attorneys' fees is particularly appropriate here. They rely on a policy codified in part by Bankruptcy Rule 2001(b). This rule provides that an interim trustee may not be appointed until the creditors furnish a bond "conditioned to indemnify the debtor for costs, attorney's fee, expenses, and damages allowable under Sec. 303(i) of the Code." In addition, Sec. 303(i)(1)(C) specifically provides that an award may include "any damages proximately caused by the taking of possession of the debtor's property by a trustee appointed under [Sec. 303(g) ]."
 
 
 29
 The difficulty with the appellants' position is that Bankruptcy Rule 2001(b) references Sec. 303(i) which, as we have noted, does not require the district court to award a recovery and is triggered by the dismissal of an involuntary petition. The appointment of an interim trustee is a supplemental remedy available after an involuntary case is commenced "if [it is] necessary to preserve the property of the estate or to prevent loss to the estate." 11 U.S.C. Sec. 303(g). Because the appointment of an interim trustee depends in part on this independent test, there will be some cases where this standard is not met and the appointment will be wrongful even if the involuntary petition was properly filed. It is not obvious from the language of Bankruptcy Rule 2001(b) that attorneys' fees are authorized when the appointment of an interim trustee is set aside, but the involuntary petition is not dismissed. The rule speaks in terms of attorneys' fees "allowable under Sec. 303(i)" and Sec. 303(i) in turn depends on the dismissal of an involuntary petition. On the other hand, by requiring creditors to post a bond, the rule attempts to afford the debtor additional protection when an interim trustee is appointed. The focus of the rule is on the appointment of the interim trustee, not the filing of the involuntary petition, and a bond is required every time an appointment is sought. This suggests that the rule contemplates that fees incurred in having an interim trustee set aside might be recoverable regardless of whether the involuntary petition is dismissed.
 
 
 30
 We do not, however, have to resolve this issue because regardless of the rule's scope, its reliance on Sec. 303(i) demonstrates that an award is not mandatory. Any hardship accompanying the appointment of the interim trustee in this case was minimal. First, although any damages to Reid proximately caused by the interim trustee's taking possession of his personal estate are specifically provided for in Sec. 303(i)(1)(C), the appellants have not claimed such damages. Second, the appellants' claim that the interim trustee was wrongfully appointed was based in large part on the creditors' lack of standing to file the involuntary petition. If the creditors' claims against Reid were the subject of a bona fide dispute, their involuntary petition was unlawful and the appointment of the interim trustee, as a supplemental remedy, was by implication also unlawful. The effort required by Reid's counsel in attempting to have the involuntary petition dismissed and the appointment of the interim trustee set aside therefore substantially overlapped.
 
 
 31
 We hold that the district court did not abuse its discretion when it denied attorneys' fees and costs under Sec. 303(i). The appellants have not alleged that the creditors' petition was filed in bad faith and we find that the creditors' position had merit, although it failed (if only temporarily). In addition, we conclude that an award of fees incurred in attempting to have the appointment of an interim trustee set aside, if recoverable at all, is not mandatory and on the facts of this case is not required.
 
 III.
 
 32
 The appellants also argue that they are entitled to fees under the common law. They acknowledge that the "American Rule" generally prohibits the award of fees in favor of the prevailing party except in cases where the losing party has acted in bad faith, but they cite to authority in which courts have invoked their inherent equity powers to award fees in connection with removing a wrongfully appointed receiver. See, e.g., First Federal Savings & Loan Assoc. of Coffeyville v. Moulds, 202 Kan. 557, 451 P.2d 215 (1969); Stella v. Mosele, 305 Ill.App. 577, 27 N.E.2d 559 (1st Dist.1940). They argue that the wrongful appointment of the interim trustee in this case is analogous.
 
 
 33
 We agree that the situations are analogous. The appellants have not, however, cited to any case where a court has relied on its equity powers to award attorneys' fees in connection with the wrongful appointment of an interim trustee under the Bankruptcy Code of 1978. The most plausible explanation for the absence of such authority is that Congress has specifically authorized the award of attorneys' fees in certain circumstances, including Sec. 303(i), and has pre-empted the judiciary's equitable power to redistribute attorneys' fees in bankruptcy cases.
 
 
 34
 The pre-emption of the judiciary's power to award attorney's fees in situations other than those within the traditional exceptions to the American Rule was authoritatively set forth in Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). In Alyeska the Supreme Court reversed an award of fees based on the court of appeals' equitable power stating that "[the American Rule] is deeply rooted in history and in congressional policy; and it is not for us to invade the legislature's province by redistributing litigation costs in the manner suggested by respondents...." Id. at 271, 95 S.Ct. at 1628 (footnote omitted). Specifically, the Court reasoned:
 
 
 35
 [W]hat Congress has done, however, while fully recognizing and accepting the [American] rule, is to make specific and explicit provisions for the allowance of attorneys' fees under selected statutes granting or protecting various federal rights.... Under this scheme of things, it is apparent that the circumstances under which attorneys' fees are to be awarded and the range of discretion of the courts in making those awards are matters for Congress to determine.
 
 
 36
 Id. at 260-63, 95 S.Ct. at 1623-25 (citations and footnotes omitted). The application of this principle is particularly clear in this case because Sec. 303(i)(1)(C) plainly contemplates the wrongful appointment of an interim trustee. In view of the principles set forth in Alyeska, we hold that appellants' common law claim for attorneys' fees is pre-empted by Sec. 303(i). The decision of the district court is AFFIRMED.[6]
 
 
 
 *
 The Honorable Robert A. Grant, Senior District Judge of the United States District Court for the Northern District of Indiana, is sitting by designation
 
 
 [1]
 Susman and Temple did not represent Reid in his bankruptcy proceedings after mid-December 1985
 
 
 [2]
 As noted, the district court dismissed appellants' prior fee petition as premature pending resolution of the commingling issue. Seven months later, after Reid failed to appear on four consecutive instances for scheduled proceedings, the district court determined that "[c]ircumstances have mooted the need for [a] further hearing on the bona fides of the debtors' claim as to the comingling of Reid's assets with those of the involved corporation. " The court therefore proceeded to rule on appellants' fee petition. In re Reid, No. 84 B 8768, mem. op. at 8 (N.D.Ill. Jan. 14, 1986). We hold that the district court's order denying appellants' petition for attorneys' fees is, under the unique circumstances of this case, a final order for purposes of this appeal
 Recent decisions have held that pending fee petitions do not prevent the underlying judgment on the merits from becoming final and further, that a subsequent order ruling on the fee petition can be independently appealed within the time authorized by Federal Rule of Appellate Procedure 4. See Budinich v. Becton Dickinson & Co., --- U.S. ----, 108 S.Ct. 1717, 100 L.Ed.2d 178 (1988); Exchange Natl. Bank of Chicago v. Daniels, 763 F.2d 286, modified on other grounds, 768 F.2d 140 (7th Cir.1985). Appellants seek to recover fees incurred in attempting to resolve a discrete issue involved in Reid's prior appeal. The record does not indicate whether Reid's bankruptcy case has been formally resolved. However, while it is not inconceivable that Reid would reappear and attempt to continue the proceedings on this issue, this seems improbable. Further, in the unlikely event the district court would entertain such a proceeding, there is little to be gained by staying the fee petition indefinitely: Susman and Temple no longer represent Reid in his bankruptcy proceedings and there is no real possibility that we will be asked to review any further fee petitions related to this issue. See generally In re Yermakov, 718 F.2d 1465 (9th Cir.1983).
 
 
 [3]
 Section 303(i)(1)(C) was repealed by the Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy Act of 1986 ("1986 Act"), Pub.L. No. 99-554. This provision, however, remains applicable to this case because the 1986 Act did not become effective until after this case was commenced
 
 
 [4]
 The district court relied on a number of different grounds in its order denying appellants' fee petition. Because we hold that even accepting appellants' construction of our prior opinion the district court did not abuse its discretion in denying the fee petition, we need not address many of the specific issues the district court reached
 
 
 [5]
 The "not subject to a bona fide dispute" requirement was added by the Bankruptcy Amendments and the Federal Judgeship Act of 1984 and became effective only four days before the involuntary petition in the present case was filed. The contours of the bona fide dispute requirement were therefore not developed when the creditors' brought their petition against Reid
 
 
 [6]
 Because we affirm the district court's decision denying fees, we also deny appellants' motion for fees related to this appeal