209 F.3d 100 (2nd Cir. 2000)
 In Re: Bayshore Wire Products Corp., Debtor.
Lubow Machine Co., Inc. and Marksmen Manufacturing, Inc., Creditors-Appellants,
v.
Bayshore Wire Products Corp., Appellee.
 Docket No. 99-5016
August Term, 1999
 UNITED STATES COURT OF APPEALS
For the Second Circuit
 Argued: November 8, 1999
Decided: March 21, 2000
 
 Appeal from a judgment of the United States District Court for the Eastern District of New York (Joanna Seybert, Judge), affirming as modified the judgment of the Bankruptcy Court (Melanie L. Cyganowski, Bankruptcy Judge), which dismissed the petition for Chapter 7 relief and awarded costs, attorney's fees, and damages under 11 U.S.C. 303(i)(1) and (2). We affirm the District Court insofar as it affirmed the dismissal of the petition and the award of costs and attorney's fees pursuant to 303(i)(1), but we find no basis to support the Bankruptcy Court's finding that the petition was filed in "bad faith" and therefore reverse the judgment to the extent that it affirmed the award of damages pursuant to 303(i)(2).
 Affirmed in part and reversed in part.
 Bruce H. Kaplan, Hamburger, Maxson & Yaffe, LLP, Melville, NY (Richard Hamburger, of counsel), for Creditors-Appellants.
 Kevin G. Snover, North Babylon, NY, for Appellee.
 Before: Winter, Chief Judge, Cardamone, and Straub, Circuit Judges.
 Straub, Circuit Judge:
 
 
 1
 Creditors-Appellants Lubow Machine Co., Inc. ("Lubow Machine") and Marksmen Manufacturing, Inc. ("Marksmen") appeal from a judgment entered on February 3, 1999 (Joanna Seybert, Judge), which affirmed as modified a judgment of the United States Bankruptcy Court for the Eastern District of New York (Melanie L. Cyganowski, Bankruptcy Judge) dismissing their petition for Chapter 7 relief against Bayshore Wire Products Corporation ("Bayshore") and awarding costs, attorney's fees, and damages under 11 U.S.C. 303(i)(1) and (2). For the reasons that follow, we affirm the judgment of the District Court insofar as it affirmed the dismissal of the petition and the award of costs and attorney's fees pursuant to 303(i)(1), but we reverse the judgment to the extent that it affirmed the award of damages pursuant to 303(i)(2) because the Bankruptcy Court clearly erred in finding that the petition was filed in "bad faith."
 
 BACKGROUND
 
 2
 Bayshore was founded in 1991 by Socratis Stavropoulos and Myron Lubow, the President of Lubow Machine. Stavropoulos served as Bayshore's president from the company's inception. On September 22, 1995, Lubow Machine, Marksmen, and Roger McLean filed an involuntary petition for relief under Chapter 7 against Bayshore, asserting claims of $144,300.00, $520.00, and $2,528.55, respectively. On the same date, Lubow Machine and McLean moved by order to show cause for the appointment of an interim trustee to operate Bayshore and manage its property. After a hearing, the Bankruptcy Court granted the creditors' application in its entirety.
 
 
 3
 Bayshore subsequently sought reconsideration of that decision and moved to dismiss the petition for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure on the ground that there were less than three petitioning creditors whose claims were not subject to a bona fide dispute. Before the Bankruptcy Court had ruled on these motions, three unsecured creditors CNA Insurance Company, Gary S. Shaw, and Robert Deligdish joined the involuntary petition in accordance with 11 U.S.C. 303(c), asserting claims of $341.53, $300.00, and $320.44, respectively. The Bankruptcy Court subsequently denied Bayshore's motions for reconsideration and dismissal. It reached this decision after noting, solely on the basis of the papers before it, that (1) the claims of Marksmen, Shaw, and Deligdish were subject to a bona fide dispute because the debts had either been paid or were unknown to Bayshore, (2) the claims of McLean and CNA Insurance Company were undisputed, and (3) Lubow Machine appeared to be a petitioning creditor whose claim was not subject to a bona fide dispute.
 
 
 4
 Trial was held in December 1995. On July 30, 1996, the Bankruptcy Court issued a Decision and Order, which was subsequently amended on August 19, 1996 and September 24, 1996. In the amended Decision and Order, the Bankruptcy Court relied upon its earlier finding that the claims of Marksmen, Shaw, and Deligdish were subject to a bona fide dispute. Based on the testimonial and documentary evidence presented at trial, the Bankruptcy Court concluded contrary to its earlier tentative conclusion that Stavropoulos rather than Bayshore was liable for the primary debt allegedly due to Lubow Machine and that a bona fide dispute existed as to all other debts allegedly owed by Bayshore to Lubow Machine. The Bankruptcy Court then ruled that the involuntary Chapter 7 bankruptcy proceeding had been improperly commenced under 11 U.S.C. 303(b)(1) because there were only two petitioning creditors whose claims were not contingent or subject to a bona fide dispute. The Bankruptcy Court held, in the alternative, that (1) pursuant to 11 U.S.C. 303(h)(1), relief was inappropriate because the creditors had failed to show that Bayshore was generally not paying its debts as they became due, and (2) pursuant to 11 U.S.C. 305(a)(1), the interests of the creditors and the alleged debtor were better served by dismissal of the case.
 
 
 5
 The Bankruptcy Court also ruled that Bayshore was entitled to an award of costs and reasonable attorney's fees in accordance with 303(i)(1), to be paid by all of the petitioning creditors. The Bankruptcy Court further concluded that Lubow Machine and McLean filed the involuntary bankruptcy petition in bad faith and therefore held them liable for any damages proximately caused by such filing and punitive damages pursuant to 303(i)(2).
 
 
 6
 On January 9, 1997, the Bankruptcy Court issued a judgment ordering Lubow Machine, Marksmen, and McLean to pay Bayshore $26,735.00 in attorney's fees and $23,087.27 in costs and damages, and ordering Lubow Machine and McLean to pay an additional $10,000.00 in punitive damages. McLean and Bayshore subsequently entered into a stipulation of settlement that was endorsed by the Bankruptcy Court and approved by the District Court.
 
 
 7
 On appeal, the District Court affirmed the Bankruptcy Court's dismissal of the case pursuant to 303(b)(1) and 303(h)(1); modified the award of costs and damages against Marksmen to make clear that it was made pursuant to 303(i)(1) and not 303(i)(2); and reversed the Bankruptcy Court's dismissal of the case under 305(a).
 
 
 8
 This timely appeal from the judgment of the District Court ensued.
 
 DISCUSSION
 
 9
 On appeal, the creditors argue that the Bankruptcy Court erred in dismissing the petition because (1) the petition was brought by three or more creditors whose claims meet the requirements of 303(b)(1) and (2) Bayshore was not generally paying its debts as they became due, rendering relief appropriate under 303(h)(1). The creditors further contend that the Bankruptcy Court abused its discretion in awarding costs, attorney's fees, and damages against them pursuant to 303(i)(1) and (2). We address these arguments in turn.[1] Like the District Court, we review the Bankruptcy Court's findings of fact for clear error, see Casse v. Key Bank Nat'l Ass'n (In re Casse), 198 F.3d 327, 332 (2d Cir. 1999), its conclusions of law de novo, see id., and its decision to award costs, attorney's fees, and damages for abuse of discretion, see Susman v. Schmid (In re Reid), 854 F.2d 156, 159 (7th Cir. 1988).
 
 I. Dismissal of the Petition
 
 10
 When the petition was filed in 1995, 303(b)(1) permitted an involuntary case to be commenced "by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute . . . if such claims aggregate at least $10,000 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims." 11 U.S.C. 303(b)(1).[2] The Bankruptcy Court dismissed the creditors' petition because it concluded that only McLean and CNA Insurance Company were "holder[s] of a claim . . . that is not contingent as to liability or the subject of a bona fide dispute" and therefore that the requirements of 303(b)(1) had not been met. On appeal, the creditors argue that Lubow Machine has a claim that is neither contingent nor the subject of a bona fide dispute. They assert that Bayshore owes Lubow Machine over $143,000 including $122,300 for the purchase of a machine designed to manufacture wire gridwork and shelving, $14,500 for repairs done to the machine, $4,800 for Bayshore's monthly rent for July 1992, and $2,700 for the cost of a replacement air compressor.
 
 
 11
 With regard to the alleged debt for the purchase of the machine, it is difficult to reconcile the creditors' position with the language of Bayshore's shareholders' agreement. The agreement provides in pertinent part:
 
 
 12
 The machine was purchased by Socratis Stavropoulos in June of 1991 from Lubow Machine Co. Inc. with the understanding that Myron Lubow would get half the shares for his idea, invention and direction already given to the corporation as of June 20, 1992.
 
 
 13
 . . . Balance of money owed by Socratis Stavropoulos to Lubow Machine Co. Inc. will be paid out after the business makes enough money and a formula has to be created.
 
 
 14
 The agreement was signed by Lubow once and by Stavropoulos twice once in his personal capacity and once in his capacity as the President of Bayshore. At trial, there was also evidence that Stavropoulos had repaid Lubow Machine at least $77,700 of the debt for the machine in checks issued from his personal account or the bank account of an entity controlled by him.[3] In light of the shareholders' agreement, Stavropoulos's signature in his personal capacity, and the history of payments by Stavropoulos, we agree with the Bankruptcy Court that any debt for the purchase of the machine runs from Stavropoulos personally to Lubow Machine.
 
 
 15
 The creditors maintain that this conclusion is belied by an affidavit prepared by Stavropoulos in the context of a state court dissolution proceeding, which states:
 
 
 16
 In approximately August of 1991, [Lubow] and I entered into an agreement whereby he would contribute one of his machines . . . , and we would form Bayshore . . . . The understanding was that Bayshore would pay to Lubow $200,000 (approximately half the value of the machine) and that thereafter Lubow and I would be partners in Bayshore.
 
 
 17
 Whatever probative value this affidavit might have, however, is undermined by the Bankruptcy Court's factual finding that "Stavropoulos did not understand the implications of referring to Bayshore as a party rather than himself personally" and that he frequently "referred to Bayshore from time to time when, indeed, he meant to refer to himself." Accordingly, we see no error in the lower courts' conclusion that Bayshore is not liable for the purchase of the machine.
 
 
 18
 The Bankruptcy Court further found that the alleged debt for repairs to the machine was subject to a bona fide dispute because it appeared that Lubow had exercised control over the proceeds of an insurance claim arising out of the repairs. The Bankruptcy Court also concluded that there was a bona fide dispute with respect to the alleged remaining debts because bookkeeping failures by Lubow Machine and Bayshore made it impossible to tell when the invoices proffered at trial had been prepared, whether they were ever received by Bayshore, and whether they were paid in the ordinary course of Bayshore's business. Given the Bankruptcy Court's findings, we agree that any claim that Lubow Machine has against Bayshore is subject to a bona fide dispute and therefore cannot serve as the basis for an involuntary petition in bankruptcy. It was therefore appropriate for the Bankruptcy Court to dismiss the creditors' petition for failure to meet the requirements of 303(b)(1).
 
 
 19
 Because we conclude that the creditors' petition was properly dismissed for failure to meet the requirements of 303(b)(1), we need not address the lower courts' alternate ruling that the creditors were not entitled to relief pursuant to 303(h)(1) because Bayshore was generally paying its debts as they became due.[4]
 
 
 20
 II. Award of Costs, Attorney's Fees, and Damages
 
 
 21
 The creditors next argue that the Bankruptcy Court abused its discretion in awarding costs, attorney's fees, and damages against them pursuant to 303(i)(1) and (2) because they did not act in bad faith. Section 303(i) provides:
 
 
 22
 If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment
 
 
 23
 (1) against the petitioners and in favor of the debtor for
 
 
 24
 (A) costs; or
 
 
 25
 (B) a reasonable attorney's fee; or
 
 
 26
 (2) against any petitioner that filed the petition in bad faith, for
 
 
 27
 (A) any damages proximately caused by such filing; or
 
 
 28
 (B) punitive damages.
 
 
 29
 11 U.S.C. 303(i). Under the terms of the statute, bad faith is not a prerequisite to an award of costs and attorney's fees under 303(i)(1). Cf. Susman, 854 F.2d at 160 (noting that "bad faith on the part of the creditors is not the only situation in which fees may be awarded"). We have no reason and the creditors have offered us no reason to believe that the Bankruptcy Court exceeded its allowable discretion in awarding costs and attorney's fees under 303(i)(1) in this case. Accordingly, we reject their challenge to the portion of the District Court's judgment that affirmed the 303(i)(1) award.
 
 
 30
 The creditors' challenge to the award of damages pursuant to 303(i)(2) gives us greater pause. Such an award requires a finding of bad faith. Moreover, "there is a presumption of good faith in favor of the petitioning creditor, and thus the alleged debtor has the burden of proving bad faith." United States Fidelity & Guar. Co. v. DJF Realty & Suppliers, Inc., 58 B.R. 1008, 1011 (N.D.N.Y. 1986), quoted in LNC Invs., Inc. v. Secured Equip. Trust of Eastern Airlines, Inc. (In re Secured Equip. Trust of Eastern Air Lines, Inc.), No. 91 Civ. 5049 (MBM), 1992 WL 295943, at *6 (S.D.N.Y. Oct. 8, 1992).
 
 
 31
 "Because 'bad faith' is not defined in the bankruptcy code, and because there is no legislative history addressing the intended meaning of this language, courts have used different approaches to determine whether a petition was filed in bad faith [for purposes of 303(i)(2)]." General Trading Inc. v. Yale Materials Handling Corp., 119 F.3d 1485, 1501 (11th Cir. 1997), cert. denied, 523 U.S. 1055 (1998). Some courts have used an "improper use" test, which "finds bad faith when a petitioning creditor uses involuntary bankruptcy procedures in an attempt to obtain a 'disproportionate advantage' for itself, rather than to protect against other creditors obtaining disproportionate advantages, particularly when the petitioner could have advanced its own interests in a different forum." In re K.P. Enter., 135 B.R. 174, 179 n.14 (Bankr. D. Me. 1992); see also In re Better Care, Ltd., 97 B.R. 405, 410-11 (Bankr. N.D. Ill. 1989). Other courts have applied an "improper purpose" test, where bad faith exists if the filing of the petition was motivated by ill will, malice, or a desire to embarrass or harass the alleged debtor. See, e.g., In re Camelot, Inc., 25 B.R. 861, 864 (Bankr. E.D. Tenn. 1982). A third line of cases employs an objective test for bad faith based on "what a reasonable person would have believed." Jaffe v. Wavelength, Inc. (In re Wavelength, Inc.), 61 B.R. 614, 620 (B.A.P. 9th Cir. 1986) (internal quotation marks omitted). Finally, as the Eleventh Circuit has observed, a number of courts have sought to model the bad faith inquiry on the standards set forth in Bankruptcy Rule 9011. See General Trading Inc., 119 F.3d at 1501-02; In re Fox Island Square Partnership, 106 B.R. 962, 967-68 (Bankr. N.D. Ill. 1989). According to the Eleventh Circuit:
 
 
 32
 An analysis under Rule 9011 inquires into "a significant objective requirement bearing on the legal justification of a claim or defense: a reasonable inquiry into the facts and the law." In addition to requiring an objective inquiry, Rule 9011 requires a subjective inquiry as well: the bankruptcy proceeding cannot have been interposed for an improper purpose, "such as to harass, to cause delay, or to increase the cost of litigation."
 
 
 33
 General Trading Inc., 119 F.3d at 1502 (citation omitted).
 
 
 34
 The Bankruptcy Court concluded that it did not need to choose among these approaches because Lubow Machine and McLean had filed the petition in bad faith under any of the tests. With respect to Lubow Machine, the Bankruptcy Court based its determination upon "the fact that Lubow Machine knew, or was reckless in not knowing, that any debt that remained due and owing from the sale of the machine was the debt of [Stavropoulos] and not of Bayshore." The Bankruptcy Court further found that "[i]f either Lubow Machine or McLean had made even the barest of a reasonable inquiry, each would have recognized that Bayshore was paying its debts as they became due."
 
 
 35
 Like the Bankruptcy Court, we see no need to choose among the various tests for bad faith in disposing of this case; however, unlike the Bankruptcy Court, we conclude that there is no basis for a finding of bad faith under any of the tests currently in usage. At the time the petition was filed, Lubow Machine and McLean had access to an affidavit in which Bayshore's president stated that "[t]he understanding [when Bayshore was formed] was that Bayshore would pay to Lubow $200,000." While we agree with the Bankruptcy Court's post-trial conclusion that the debt for the purchase of the machine in fact runs from Stavropoulos to Lubow Machine, it is also clear that, at the time the petition was filed, Stavropoulos's affidavit provided Lubow Machine and McLean with a reasonable basis for believing that Bayshore was liable to Lubow Machine for the purchase of the machine. Indeed, in denying Bayshore's motion to dismiss, the Bankruptcy Court itself tentatively concluded that Bayshore was indebted to Lubow Machine for the purchase of the machine. There is thus no basis for the Bankruptcy Court's finding that "Lubow Machine knew, or was reckless in not knowing, that any debt that remained due and owing from the sale of the machine was [Stavropoulos's] debt." Cf. Baker v. Latham Sparrowbush Assocs. (In re Cohoes Indus. Terminal, Inc.), 931 F.2d 222, 229 (2d Cir. 1991) ("[A] court may not ordinarily consider a Chapter 11 bankruptcy petition to be frivolously filed if the court itself previously rejected a motion to dismiss the petition.").
 
 
 36
 Further, without addressing the merits of the 303(h)(1) issue presented on this appeal, we note that there was some evidence to suggest that Bayshore was not paying its debts as they became due at the time this proceeding was commenced. In July 1995, the creditors received the results of a lien search, which indicated that federal tax liens totaling over $24,000 had been filed against Bayshore.[5] At the time that the petition was filed in September 1995, Bayshore "had no financial ledgers of any kind," so the creditors could not obtain any assurance from the company itself as to its solvency. Given these facts, we conclude that the Bankruptcy Court clearly erred in finding that "[i]f either Lubow Machine or McLean had made even the barest of a reasonable inquiry, each would have recognized that Bayshore was paying its debts as they became due." Because there is no basis upon which to reject the presumption that the creditors acted in good faith, the Bankruptcy Court clearly erred in finding that Lubow Machine and McLean had filed the petition in bad faith. Accordingly, we reverse the award of damages pursuant to 303(i)(2).
 
 CONCLUSION
 
 37
 The judgment of the District Court is affirmed in part and reversed in part.
 
 
 
 Notes
 
 
 [1]
 We have also considered all of the creditors' remaining arguments and have found them to be without merit.
 
 
 [2]
 On April 1, 1998, the dollar amount in effect under 303(b) was raised to reflect the change in the Consumer Price Index. See 11 U.S.C. 104(b)(1).
 
 
 [3]
 Stavropoulos testified that he made additional cash payments to Lubow totaling $141,489.00, but this testimony and the supporting documentary evidence were not credited by the Bankruptcy Court.
 
 
 [4]
 Section 303(h) provides that if the petition is timely controverted, "after trial, the court shall order relief against the debtor in an involuntary case . . . only if (1) the debtor is generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute." 11 U.S.C. 303(h).
 
 
 [5]
 The Internal Revenue Service levied Bayshore's accounts receivable on the day before the petition was filed and again on November 27, 1995.