**In re Susan L. WALSH, Debtor.**

No. 04–20240.

United States Bankruptcy Court,
W.D. New York.

March 8, 2004.

Marie C. D'Amico, Esq., Deputy County Attorney, Rochester, NY, for Alleged Debtor.

Charles R. Ellington, Rochester, NY, pro se Petitioning Creditor.

## SUPPLEMENTAL DECISION & ORDER

JOHN C. NINFO, III, Chief Judge.

### BACKGROUND

As of August 31, 2003, Charles R. Ellington of 414 Avery Street, Rochester, New York ("Ellington"), was obligated to pay court-ordered child support to Cassandra Thornton in the amount of $1,990.17 and to Tonya Herbert in the amount of $2,337.42. These amounts were being collected by the Monroe County Child Support Enforcement Unit (the "MCCSEU"). At that time, Susan L. Walsh ("Walsh") was a Deputy County Attorney and the MCCSEU manager.

Prior to August 31, 2003, in accordance with New York State Law, Ellington's commercial driver's license was suspended and his bank accounts were restrained because of his failure to pay his child support obligations.

Rather than doing what was necessary to earn or otherwise obtain the funds to pay his child support obligations, Ellington turned to one or more internet web sites. There he obtained information and the forms that are currently being utilized in various debtor scams as a tactic to disrupt, discourage and even harm entities and individuals, including public officials, that are attempting to collect legitimate obligations.

In furtherance of his attempts to both be relieved of his child support obligations without actually paying them and have the suspension of his commercial driver's license vacated, Ellington served the MCCSEU, Walsh and/or the Comptroller of the State of New York with: (1) a Registered Bond for Discharge of Debt;[1] (2) an Involuntary Bankruptcy–Notice of Forfeiture against Walsh; (3) a Notice of Default and Entry for Default Judgment before an alleged International Tribunal; (4) an amended UCC–1 Financing Statement in connection with a security interest that Ellington had purportedly taken in his own name; and (5) various other incom-

---

1. This was presented by Ellington, from himself as a purported sovereign nation, to dis-charge his child support obligations.

prehensible documents. The MCCSEU returned these documents to him and advised him that his license suspension would be vacated only if he paid all of his past due child support obligations.

On January 23, 2004, Ellington filed an involuntary petition (the "Involuntary Petition") under Section 303 that named Walsh as the alleged debtor.

On February 3, 2004:(1) Walsh filed a Verified Answer, which also requested that the Court dismiss the Involuntary Petition as a bad faith filing and grant her other relief; and (2) the Court entered an Order to Show Cause for a hearing on February 10, 2004.

In her Verified Answer and at trial, Walsh indicated that Providian Bank ("Providian") cancelled one of her credit cards when it learned of the filing of the Involuntary Petition, even though no Order for Relief had ever been entered by the Court.

After conducting the February 10, 2004 hearing, the Court issued the attached Interim Order Granting Alleged Debtor's Motion to Dismiss (the "Interim Order"), which: (1) found that Ellington was not eligible to file the Involuntary Petition, as required under Bankruptcy Code Section 303(b); (2) found that Ellington had failed to meet his burden to show that Walsh was generally not paying her debts as they became due as required by Section 303(h)(1); (3) dismissed the Involuntary Petition; (4) awarded costs and attorney's fees under Section 303(i)(1)(A) and (B); (5) found that Ellington had filed the Petition in bad faith and that the filing was a blatant abuse of the bankruptcy system; (6) awarded compensatory and punitive damages under Section 303(i)(2)(A) and (B); (7) granted various other items of relief; and (8) indicated that the Court would file a Supplemental Decision & Order.

## DISCUSSION

### I. The Supplemental Decision & Order

In view of the damage done to Walsh and her credit rating by the mere filing of the Involuntary Petition, the Court issued the Interim Order as soon as possible after the February 10, 2004 hearing in order to permit Walsh to begin the undoubtedly time-consuming and possibly expensive efforts to unwind, with Providian and others, the damage that had been done. However, the Court reserved the right to file a Supplemental Decision & Order, so that it could: (1) set the date by which Ellington must pay the monetary awards made in the Interim Order; (2) set forth in more detail the standard that the Court used and will use in the future to determine whether the filing of an involuntary petition under Section 303 is in bad faith; and (3) establish a more detailed procedure for the Court in the Rochester Division of the Western District of New York when *pro se* involuntary petitions are filed against individual alleged debtors.

### II. An Involuntary Petition Filed in Bad Faith

Section 303(i)(2)(A) and (B) provides that:

(i) If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment–

(2) against any petitioner that filed the petition in bad faith, for–

(A) any damages proximately caused by such filing; or

(B) punitive damages.

▮▮ We know from the decision of the United States Court of Appeals for the

Second Circuit in *Lubow Machine Co., Inc. et al, v. Bayshore Wire Products Corp.,* 209 F.3d 100 (2nd Cir.2000) (*"Bayshore Wire"*) that: (1) "bad faith" is not defined in Section 303 and there is no legislative history addressing the intended meaning of this term in Section 303(i)(2); (2) the four different approaches that courts have used to determine whether an involuntary petition was filed in bad faith for purposes of Section 303(i)(2) are: (a) an "improper use test," which inquires into whether the petitioner is using the bankruptcy system to obtain a disproportionate advantage over other creditors rather than attempting to protect itself against other creditors obtaining a disproportionate advantage; (b) an "improper purpose test," which inquires into whether the petitioner was motivated by such things as ill will, malice or a desire to embarrass or harass the alleged debtor; (c) an "objective test," which inquires into what a reasonable person would have believed in connection with the purpose of Section 303 and the allegations required to be made; and (d) a "Rule 9011 test," which inquires into whether the petition: (i) was justified based upon a reasonable inquiry into the facts and the law; and (ii) was interposed for an improper purpose. *See Bayshore Wire,* 209 F.3d at 105–106.

Since the Second Circuit Court of Appeals has not yet ruled on which of these approaches or combination of approaches should be utilized by Bankruptcy Courts in determining whether an involuntary petition was filed in bad faith under Section 303(i)(2), this Court in the future will make findings under each approach in determining whether there has been a bad faith filing.

In this case, the filing of the Involuntary Petition by Ellington was a bad faith filing under each of these four approaches for the reasons the Court set forth in the Interim Order.

### III. *Procedures for the Filing of an Involuntary Petition by a Pro Se Petitioner Against an Individual*

In *In re Grossinger,* 268 B.R. 386 (Bankr.S.D.N.Y.2001), Bankruptcy Judge Adlai S. Hardin, Jr., in addressing patently baseless and improper involuntary petitions, stated that:

> In such a case there may be no impact upon the debtor, since no order for relief is entered, the credit agencies and creditors are not notified, the debtor and his property do not become subject to the jurisdiction of the Bankruptcy Court and the debtor is not required to do anything.

■ In view of: (1) the implementation of a new case management and electronic filing system ("CM/ECF") in many of the Bankruptcy Courts, including this Court, that results in the Court's case files immediately being available to PACER users over the internet; and (2) the experience of this case, which demonstrates that, with the advent of CM/ECF, Judge Hardin's assertion that an alleged debtor cannot be harmed by the mere filing of an involuntary petition because there has been no order for relief entered, this Court feels that it must establish some reasonable procedures to be utilized in the event that any future involuntary petitions are filed by *pro se* alleged petitioning creditors against individual alleged debtors. These procedures will hopefully prevent, or at least minimize, the type of harm experienced by Walsh because of the mere filing of a bad faith involuntary petition against her.

In the future, if an involuntary petition is filed in the Rochester Division of the Western District of New York by a *pro se* petitioner against an individual:

1. The Clerk's Office will accept the involuntary petition for filing, along with the payment of all required filing fees, and assign a miscellaneous case number and enter the fact of the involuntary filing on the Court's Miscellaneous Docket without entering that information into CM/ECF;

2. The Clerk's Office will not provide the petitioner with a time-stamped copy of the involuntary petition before an Order for Relief is entered without the specific authorization of a Judge of this Court;

3. The Clerk's Office may provide the petitioner with a receipt for the payment of the filing fee that can indicate that the fee was paid in connection with an involuntary petition, however, the receipt shall not indicate the name of the alleged debtor or any case number;

4. The Clerk's Office will issue a Summons, however, it shall not deliver it to the petitioner. Rather, the Clerk's Office will serve the Summons on the alleged debtor by mail in accordance with Bankruptcy Rule 7004;

5. Pursuant to Section 107(b)(2),[2] unless and until a specific Court order is entered to the contrary, or an Order for Relief is entered against the alleged debtor, the Clerk's Office shall take such steps as necessary to: (a) maintain a paper file of all pleadings and documents filed in the case; (b) insure that none of the pleadings or other documents filed in connection with the case are reviewed by the public, except with the express permission of a Judge of this Court; and (c) insure that no copies of any pleadings or documents shall be available on the Court's CM/ECF system unless and until directed to electronically image such documents and open a case on the Court's CM/ECF system by a Judge of this Court;

6. The Clerk's Office shall deliver a copy of this Supplemental Decision & Order to the *pro se* petitioner and direct his or her attention to Paragraph 7 below; and

7. The petitioner shall not inform any third-party of the filing of the involuntary petition without the specific written authorization of a Judge of this Court.

## IV. *Payment of Awards to Walsh*

Ellington shall pay the awards of $1,000.00 and $3,750.00 to Walsh by March 24, 2004, or she shall be entitled to enter a judgment against him.

**IT IS SO ORDERED.**

## INTERIM ORDER GRANTING ALLEGED DEBTOR'S MOTION TO DISMISS

The Court having conducted a hearing on February 10, 2004 in connection with:

1. The January 23, 2004 involuntary petition (the "Involuntary Petition") filed by Charles R. Ellington, 414 Avery Street, Rochester, New York (the "Petitioner") against the alleged debtor, Susan L. Walsh ("Walsh"), the former acting manager of the Monroe County Child Support Enforcement Unit (the "MCCSEU");

2. The February 3, 2004 Verified Answer filed by Walsh, which requested dismissal of the Involuntary Pe-

---

**2.** Section 107(b) provides that:
    (b) request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may–
        (1) protect an entity with respect to a trade secret or confidential research, development, or commercial information; or
        (2) protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title.
11 U.S.C. § 107 (2004).

tition and other relief, that was supported by an Attorney's Declaration and her Affidavit; and

3. The Court's February 3, 2004 Order to Show Cause and Order Shortening Time.

■■■ The Court, having considered all of the pleadings and proceedings in this case, as well as the testimony of the Petitioner and Walsh at the hearing, finds that:

1. The Petitioner was not eligible to file the Involuntary Petition as required by Bankruptcy Code Section 303(b), because:

   a. He did not hold a valid debt against Walsh, as defined in Bankruptcy Code Section 101(12), nor did he have a valid claim against Walsh, as defined in Bankruptcy Code Section 101(5);

   b. Any claim that he may have alleged in the Petition that he held against Walsh was clearly contingent as to liability;

   c. Any claim he may have alleged in the Petition that he had against Walsh was clearly subject to a bona fide dispute; and

   d. He knew that his alleged claim for damages of $1,000,000.00 had no good faith basis in law or in fact, and that it was at best contingent and the subject of a bona fide dispute;

2. Petitioner has failed to meet his burden, pursuant to Bankruptcy Code Section 303(h)(1), to demonstrate that at the time of the filing of the Involuntary Petition Walsh was generally not paying her debts as they became due, except for debts that were the subject of a bona fide dispute, in that:

   a. The Petitioner's testimony indicated that he made no good faith or reasonable investigation into Walsh's finances, her debts or whether she was generally paying her debts as they became due;

   b. The Petitioner made no good faith or reasonable inquiry into the facts and law with respect to this requirement, specifically how Courts have interpreted what "generally paying debts" means;

   c. There is no basis in law and fact that required Walsh to meet or respond to any of the Petitioner's pre-petition demands;

   d. The failure of Walsh to meet or respond to the Petitioner's unilateral, self-help prepetition demands did not constitute a failure to generally pay her debts as they became due; and

   e. Walsh's testimony that she was paying all of her debts as they became due was fully credible;

3. Walsh's request, in the event that the Court were to dismiss the Involuntary Petition, for costs and a reasonable attorney's fee in the amount of $3,750.00, incurred by the County of Monroe in representing her, is a reasonable and appropriate award of costs and attorney's fees under Bankruptcy Code Section 303(i)(1)(A) and (B);

4. The Petitioner filed the involuntary petition in bad faith, for reasons that include that:

   a. He admits that he filed it as a wake up call to the County of Monroe so he would get his commercial driver's license back (his license had been suspended, pursuant to New York State Law, because of his failure to pay his child support obligations);

   b. He made no good faith and reasonable inquiry into the Bankruptcy Code and Rules to determine what would happen in the administration of the bankruptcy estate if an order

for relief were entered against Walsh, so that his conclusion that somehow the case would result in him either being paid as a creditor enough that he could pay his back child support and get his commercial license back, or otherwise have his license returned to him as part of the bankruptcy, had no basis in law or fact;

c. He made no reasonable inquiry into whether Walsh had any non-exempt assets that could be liquidated and distributed to creditors in a Chapter 7 case;

d. He acknowledged that Walsh was not the one who suspended his commercial driver's license, but only that, as manager of the MCCSEU, she may have some ability to direct the New York State Department of Motor Vehicles to vacate the suspension; and

e. He knew and he admitted that he had no valid claim or debt against Walsh that was non-contingent or not the subject of a bona fide dispute;

5. Walsh's request for compensatory and punitive damages of $1,000.00, pursuant to Section 303(i)(2)(A) and (B), is a reasonable and appropriate award to both compensate her for her damages, including the cancellation of one of her credit cards and the efforts that it will take her to restore her credit, as well as to deter such bad faith and abusive behavior in the future.

Based upon the above findings, it is hereby

**ORDERED**, that the involuntary petition against Walsh is in all respects dismissed; and, it is further

**ORDERED**, that any and all credit reporting agencies shall, upon receiving a copy of this Order, expunge from Walsh's credit report and any reference to this Involuntary Petition having been filed, or, in the alternative, indicate on their records that the Involuntary Petition was dismissed and that it was filed: (1) in bad faith; (2) without any basis in law or fact; and (3) by the Petitioner, Charles R. Ellington, who was ineligible to file such a Petition; and it is further

**ORDERED**, that the Petitioner, Charles R. Ellington, is hereby and forever prohibited from filing an involuntary petition, pro se or with the assistance of an attorney or with other petitioners, in the United States Bankruptcy for the Western District of New York, unless such petition is pre-approved by a Judge of this Bankruptcy Court, and the Clerk of Court is authorized to reject such a filing without pre-approval of a Bankruptcy Judge of this Court; and it is further

**ORDERED**, that the Petitioner, Charles R. Ellington, shall pay to Walsh the sum of $3,750.00, by certified check, bank draft or money order, as costs and a reasonable attorney's fee, pursuant to Bankruptcy Code Section 303(i)(1)(A) and (B), which shall be paid on or before a date to be set forth in a further Decision & Order of this Court which shall supplement this Interim Order; and it is further

**ORDERED**, the if the $3,750.00 ordered above is not paid as directed in the supplemental Decision & Order, Walsh can enter a money judgment against the Petitioner for such amount; and it is further

**ORDERED**, that the Petitioner, Charles R. Ellington, shall pay to Walsh the sum of $1,000.00, by certified check, bank draft or money order, as compensatory and punitive damages, pursuant to Bankruptcy Code Section 303(i)(2)(A) and (B), because of his bad faith filing, and if that amount is not paid as directed in the supplemental Decision & Order, Walsh can

enter a money judgment against the Petitioner for such amount; and it is further

**ORDERED**, that at any time after the supplemental Decision & Order is entered, and Walsh believes that any and all negative repercussions to her credit rating and reputation have been addressed, she may request in writing that access to the records of this case be sealed pursuant to Bankruptcy Code Section 107(b) without a further Order of the Bankruptcy Court and the Clerk will so seal the records; and it is further

**ORDERED**, that the Court reserves the right to fully supplement its Findings and Conclusions in its supplemental Decision & Order.

Dated Feb. 10, 2004.