**Phillip D. MILLER, Creditor–Appellant,**

v.

**Charles E. SIMPSON, English Sheppard Realty Corp., Debtors–Appellees,**

**Diana G. Adams, United States Trustee, Region 2, Trustee–Appellee.**

**No. 07–5295–bk.**

United States Court of Appeals, Second Circuit.

April 28, 2009.

Francis D. Terrell, White Plains, NY, for Creditor–Appellant.

Charles E. Simpson, Windels Marx Lane & Mittendorf, LLP, New York, NY, for Debtor–Appellee.

Eric K. Bradford, Office of the United States Trustee, Department of Justice, Boston, MA (P. Matthew Sutko, Walter W. Theus, Jr., Executive Office for the United States Trustee, Department of Justice, Washington, DC; William E. Curtin, Office of the United States Trustee, Depart-ment of Justice, Brooklyn, NY; on the brief).

Present: Hon. CHESTER J. STRAUB, Hon. ROSEMARY S. POOLER, Hon. REENA RAGGI, Circuit Judges.

## SUMMARY ORDER

Creditor-appellant, Phillip D. Miller, Esq., appeals a September 19, 2007 order of district judge Joanna Seybert, affirming the June 19, 2006 order of bankruptcy judge Dorothy Eisenberg, which granted the motion of the United States Trustee directing Miller to disgorge all fees received from the debtor, English Sheppard Realty Corp. ("ESR") and deliver to ESR $298,000, and denied Miller's motion for compensation and reimbursement of expenses.

"Like the District Court, we review the Bankruptcy Court's findings of fact for clear error, its conclusions of law *de novo,*" *In re Bayshore Wire Prods. Corp.,* 209 F.3d 100, 103 (2d Cir.2000) (citations omitted), and its decision to award, deny and disgorge attorneys' fees for abuse of discretion, *see id.*; *In re Arlan's Dep't Stores, Inc.,* 615 F.2d 925, 943 (2d Cir.1979). In deciding this appeal, we assume the parties' familiarity with the facts, procedural background, and specification of issues on appeal. We note only that the issues in this case center around court authorization of Miller to act as attorney for ESR and Miller's deposit and use of $281.811.63, representing the Net Sale Proceeds of ESR property located at 1325 Union Street, Brooklyn, New York, in his IOLA account, commingled with other client funds.

We begin by noting that the Trustee concedes that the amount—$298,000—ordered disgorged by the bankruptcy court was in error and that the *only* amounts that the Trustee sought disgorgement of

are the *"fees that Mr. Miller paid himself"* out of ESR funds. Thus, we affirm that portion of the order requiring Miller to disgorge attorney fees he paid to himself from the Net Sale Proceeds.

■ In so ruling, we have no doubts that disgorgement of fees was appropriate for at least two reasons. First, even assuming that Miller was treated for some purposes as counsel for ESR until May 1, 2001 (an assumption we may revisit if/when this case is returned to us after remand), *see* J.A. at 1, 6, 105–07, 112, 129–31, and independent of his actions in commingling ESR funds in an IOLA account held in his name, Miller violated that portion of the Escrow Order requiring him to retain the proceeds in an escrow account "pending confirmation of Debtor's Chapter 11 Plan of Reorganization ('Plan') and distribution pursuant to Court Order." Second, as it pertains to fees for work performed for ESR specifically, Miller did not obtain a fee award as required by 11 U.S.C. § 330(a). Thus, the bankruptcy court did not abuse its discretion in ordering Miller to disgorge fees paid to himself from the Net Sale Proceeds, without prior bankruptcy court authorization.

However, we remand to the bankruptcy court with instructions to conduct an evidentiary hearing to quantify said fees and direct Miller to disgorge that amount. We do so because we agree with the Trustee that there is no support in the record for a disgorgement order of fees totaling $298,000.[1] Indeed, this amount exceeds the total amount of the Net Sales Proceeds, $281,811.63, and further, does not account for the $35,447.42 that Miller pre-

viously disgorged to ESR. *See* J.A. at 1117. Our preliminary review of the record indicates that, from his IOLA account, Miller paid himself at least $32,500 for work performed for ESR. *See* J.A. at 183, 202 ¶ 9, 228. However, the record also reflects other disbursements from the same account, including fees to Miller for work on other client matters, but also, payments for transactions—specifically the purchase of Lots 43 and 48 and payment of related tax liens, which involved at least $220,000 of ESR estate funds—done on ESR's behalf. *See In re English Sheppard Realty Corp.*, No. 06cv4742 (E.D.N.Y. filed Aug. 30, 2006), doc. # 1–28 (Ex. 18), doc. # 1–18 (Ex. 13) at A19; J.A. at 419–20, 506–09, 516, 521, 524 ln. 83, 526 lns. 23–24, 519–30, 578, 581.

It is clear that if made out of the Net Sale Proceeds, these payments and transactions violated the Escrow Order as they were made without "Court Order" However, it is also clear that the payments related to the Lots transactions were not "fees," and accordingly, did not fall within the amounts for which the Trustee sought disgorgement. To the extent that disgorgement for fees paid to Miller for non-ESR matters are ordered disgorged, and/or to the extent that disgorgement of whole or part of the ESR estate funds used in connection with the ABSR transaction is pursued on remand, the bankruptcy court should carefully and clearly explain whether, how, and on what basis it is accounting for or requiring disgorgement of the payments related to the Lots transactions.[2] In doing so, the court should pay due attention to the fact that both ESR and the Trustee concede that the Lots

---

1. It is not entirely clear to us where the amount of $298,000 originated. The Trustee may bear responsibility for this error since it appears that it submitted the proposed order identifying $298,000 as the amount to be disbursed.

2. We are assuming, without deciding, that the Trustee and ESR have not waived the right to seek disgorgement of amounts other than fees.

were ultimately sold for $3.0 million, and that ESR in its filings to the court, described the Lots transactions as being to ESR's benefit.[3] *See* J.A. at 419–20, 717–36, 757–58, 803–24.

 Finally, we conclude that the bankruptcy court did not abuse its discretion in denying Miller's motion for compensation and reimbursement of expenses in view of Miller's serious breaches of his fiduciary obligations to the court. *See In re Arlan's,* 615 F.2d at 941, 943.

 We now turn to the various other arguments that Miller has raised in this appeal. We reject Miller's contention that he did not need an order to disburse funds because he obtained a lien under New York law. *See, e.g.,* N.Y. Jud. Law § 475 (requiring that in order to assert a charging lien, the attorney must make an application to the court to determine and enforce the lien). We also find no merit to Miller's claim that his Fifth Amendment due process rights were violated because the various motions were not adjudicated in the context of an adversarial proceeding. *See* Fed. R. Bankr.P. 7001(1); 2017(b).[4] We further conclude that any harm to Miller's due process rights by failure to provide the transcript of the March 25, 1999 hearing would be harmless as our decision does not rest on the absence of a retention order.

Thus, we AFFIRM that portion of the judgment of the district court affirming the bankruptcy court's denial of Miller's requests for compensation and reimbursement of expenses. We further AFFIRM that portion of the judgment of the district court affirming the bankruptcy court's order that Miller disgorge attorneys fees paid to himself from the ESR proceeds. However, we VACATE and REMAND to the bankruptcy court that portion of the judgments specifying the amount of fees to be disgorged by Miller. A renewed appeal will be assigned to this panel pursuant to the procedures set forth in *United States v. Jacobson,* 15 F.3d 19, 21–22 (2d Cir. 1994).

---

3. To avoid any confusion on remand, we note that our review of the record confirms that Miller brought the $220,000 and related payments, as well as his "debtor-in-possession" and "ratification" arguments to the attention of both Judge Duberstein and Judge Eisenberg. Indeed, during the May 16, 2006 hearing and in her June 19, 2006 order, Judge Eisenberg considered many of the documents that ESR now asserts were considered only by Judge Duberstein. Miller also raised these issues to the district court.

4. Any failure by Miller to request such a proceeding before the bankruptcy court would likely result in waiver. *Cf. In re Arlan's,* 615 F.2d at 942–43 (finding waiver of right to an evidentiary hearing where special counsel for debtor had the opportunity to introduce evidence but did not).